IRON ARROW HONOR SOCIETY ET AL. *v.* HECKLER,
SECRETARY OF HEALTH AND HUMAN
SERVICES, ET AL.

No. 83–118.   Decided November 14, 1983

**PER CURIAM.**

Petitioner Iron Arrow Honor Society is an all-male honorary organization founded by the first president of the University of Miami to honor outstanding University men. Traditionally, the Society has conducted its initiation ceremony on a "tapping" mound outside the student union building on University property. In 1972 Congress enacted § 901(a) of Title IX of the Education Amendments, 86 Stat. 373, 20 U. S. C. § 1681(a), and in 1974 the Department of Health, Education, and Welfare promulgated regulations implementing the statute. Regulation 86.31(b)(7) provides that "a recipient [of federal funds] shall not, on the basis of sex: . . . (7) [a]id or perpetuate discrimination against any person *by providing significant assistance to any agency, organization, or person which discriminates on the basis of sex* in providing any aid, benefit or service to students or employees." 45 CFR § 86.31(b)(7) (1975) (emphasis added) (recodified at 34 CFR § 106.31(b)(7) (1982)).

In 1976 the Secretary notified the University's president of its determination that the University was rendering "significant assistance" within the meaning of the regulation to Iron Arrow. The University advised the Secretary that it wished to comply with Title IX, but asked for time to negotiate with Iron Arrow about changing its membership policy; the Secretary agreed, but only upon the condition that the University

ban the "tapping" ceremony on campus until the question was resolved.

The University thereafter prohibited the "tapping" ceremony, and Iron Arrow responded by suing the Secretary in the United States District Court for the Southern District of Florida. It sought declaratory and injunctive relief to prevent the Secretary from interpreting Regulation 86.31(b)(7) so as to require the University to ban Iron Arrow's activities from campus. The District Court held that Iron Arrow had no standing to challenge the Secretary's action and the regulations, but this determination was reversed by the Court of Appeals for the Fifth Circuit. *Iron Arrow Honor Society* v. *Califano*, 597 F. 2d 590, 591 (1979). The District Court then granted summary judgment for the Secretary, *Iron Arrow Honor Society* v. *Hustedler*, 499 F. Supp. 496 (1980), and the Court of Appeals for the Fifth Circuit affirmed. *Iron Arrow Honor Society* v. *Schweiker*, 652 F. 2d 445 (1981). We granted Iron Arrow's petition for certiorari, vacated the decision of the Court of Appeals for the Fifth Circuit, and remanded for further consideration in light of *North Haven Board of Education* v. *Bell*, 456 U. S. 512 (1982). *Iron Arrow Honor Society* v. *Schweiker*, 458 U. S. 1102 (1982). On remand the Court of Appeals for the Fifth Circuit again affirmed with one judge dissenting. 702 F. 2d 549 (1983).

After our remand but before the decision of the Court of Appeals for the Fifth Circuit, the president of the University wrote a letter to the chief of Iron Arrow. It stated the University's unequivocal position that Iron Arrow cannot return to campus as a University organization nor conduct its activities on campus until it discontinues its discriminatory membership policy. Letter from Edward T. Foote II to C. Rhea Warren (Sept. 23, 1982), reprinted in App. to Brief for Federal Respondents, 1a–4a. The Trustee Executive Committee had adopted that position on July 15, 1980, determining that Iron Arrow may return to campus only if it satisfies the code for all student organizations, a code which includes a policy of nondiscrimination. The president's letter moreover

informed Iron Arrow that the University would maintain that position, regardless of the outcome of Iron Arrow's lawsuit. Specifically the letter stated:

> "The question is not only what the law requires. The most important question is what our University *should* do, in fairness to all students, whether the law requires it or not.
>
> .          .          .          .          .
>
> "To avoid any ambiguity that might be present because of the passage of time or change of University administrations, I have instructed counsel for the University to inform the Courts of the University's policy." *Id.*, at 2a–4a (emphasis in original).

The president further informed Iron Arrow that he was making the letter public and that he was sending a copy to all of Iron Arrow's undergraduate members. *Id.*, at 4a.

Both before the Court of Appeals for the Fifth Circuit and now before this Court in the Secretary's response to Iron Arrow's latest petition for certiorari, the Secretary has argued that that letter renders the case moot. For the reasons which follow, we agree that the case has become moot during the pendency of this litigation.

Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies. *DeFunis* v. *Odegaard,* 416 U. S. 312, 316 (1974). To satisfy the Art. III case-or-controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision. *Simon* v. *Eastern Kentucky Welfare Rights Organization,* 426 U. S. 26, 38 (1976). We think that no resolution of the present dispute between these parties can redress Iron Arrow's asserted grievance. Whatever the correctness of the Secretary's interpretation of the regulation in question, the University has stated unequivocally that it will not allow Iron Arrow to conduct its initiation activities on University prop-

erty as long as it refuses to admit women. Thus the dispute as to how the regulation should be interpreted, or the extent to which it faithfully implements the statute, is classically "moot." It is the action of the University, not that of the Secretary, which excludes Iron Arrow.

The Court of Appeals concluded by a divided vote that the case was not moot because it could still grant some relief to Iron Arrow. 702 F. 2d, at 552. It stated that the Secretary could still require the University to take other steps to comply with Title IX in addition to banning Iron Arrow from campus. For example, it could require the University to abolish all historical ties with Iron Arrow, refuse to allow Iron Arrow to use the University's name, etc. *Ibid.* The court concluded that if it decided in Iron Arrow's favor, it could issue an injunction which "would serve to insulate the plaintiffs from all of these appropriate additional enforcement actions." *Ibid.*

Whether or not these would be "appropriate additional enforcement actions," neither we nor the Court of Appeals need decide, since the Secretary is not requesting the University to take such additional steps, see Brief for Federal Respondents 13, and Iron Arrow has not sought in this lawsuit to prevent the University from doing so. Future positions taken by the parties might bring such issues into controversy, but that possibility is simply too remote from the present controversy to keep this case alive. See *Golden* v. *Zwickler*, 394 U. S. 103, 109 (1969).[1]

In rejecting the Secretary's argument that the case is moot, the Court of Appeals also relied on a line of cases from this Court supporting the proposition that the " '[v]oluntary

[1] Iron Arrow also appears to have sought a declaration of its rights under Regulation 86.31(b)(7) pursuant to 28 U. S. C. § 2201. *Iron Arrow Honor Society* v. *Hustedler*, 499 F. Supp. 496, 499 (SD Fla. 1980). It, however, has no standing under that section to seek a generalized declaration of its rights against *future* actions of the Secretary. See *Public Service Comm'n* v. *Wycoff Co.*, 344 U. S. 237, 241–249 (1952).

discontinuance of an alleged illegal activity does not operate to remove a case from the ambit of judicial power.'" 702 F. 2d, at 553 (quoting *Walling* v. *Helmerich & Payne*, 323 U. S. 37, 43 (1944)). As the dissent noted, however, most of those cases discuss whether voluntary discontinuance of challenged activities by a *defendant* moots a lawsuit. 702 F. 2d, at 565, 567 (Roney, J., dissenting). But see *St. Paul Fire & Marine Insurance Co.* v. *Barry*, 438 U. S. 531, 537–538 (1978) (involving subsequent acts of a third party). Defendants face a heavy burden to establish mootness in such cases because otherwise they would simply be free to "return to [their] old ways" after the threat of a lawsuit had passed. *United States* v. *W. T. Grant Co.*, 345 U. S. 629, 632 (1953). Thus they must establish that "there is no reasonable likelihood that the wrong will be repeated." *Id.*, at 633 (citation omitted).

This case, however, concerns the effect of the voluntary acts of a third-party nondefendant.[2] It is not the typical case where it could be argued that the University has taken its position only in order to escape the threat of an injunction. Indeed, Iron Arrow does not challenge the University's conduct in this lawsuit. Assuming that the "voluntary discontinuance" line of cases nonetheless applies to this different situation, the letter from the president expresses the University's voluntary and unequivocal intention to exclude Iron Arrow's activities from campus. Because the University has announced its decision to Iron Arrow, the public, and the courts, we conclude that there is "no reasonable likelihood" that the University will later change its mind and decide to invite Iron Arrow to return.

Because of the position that the University has taken irrespective of the outcome of this lawsuit, we conclude that the

---

[2] The University is not a named defendant in this action. The District Court did, however, join the University as an indispensable party under Federal Rule of Civil Procedure 19 in order to assure that the court could award adequate relief to Iron Arrow if it prevailed. 499 F. Supp., at 499.

case is moot and that the Court of Appeals had no jurisdiction to decide it.   Accordingly, we grant the petition for a writ of certiorari, vacate the judgment of the Court of Appeals for the Fifth Circuit, and remand to that court for entry of an appropriate order directing the District Court to dismiss the action as moot.   See *County of Los Angeles* v. *Davis*, 440 U. S. 625, 634 (1979); *United States* v. *Munsingwear, Inc.*, 340 U. S. 36, 39–40 (1950).

*It is so ordered.*

JUSTICE MARSHALL and JUSTICE BLACKMUN would deny certiorari.

JUSTICE BRENNAN, dissenting.

In my view, the issue of mootness is sufficiently dependent on uncertain factual issues concerning the University's present intention and future conduct that I would grant the petition for certiorari, vacate the decision of the Court of Appeals, and remand for resolution of this issue.

JUSTICE STEVENS, dissenting.

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell* v. *McCormack*, 395 U. S. 486, 496 (1969).[1]   Both the parties and the Court agree that the issues presented in this case remain "live"; the parties continue to disagree as to what the obligations are that federal law imposes upon the University of Miami.   Nevertheless, the Court holds that this case is moot and directs the District Court to dismiss the case because it concludes that the parties no longer have a stake in the outcome of this litigation.[2]   I disagree.

---

[1] The Court continues to follow this test for mootness.   See, *e. g.*, *Murphy* v. *Hunt*, 455 U. S. 478, 481 (1982) *(per curiam)*; *United States Parole Comm'n* v. *Geraghty*, 445 U. S. 388, 396 (1980).

[2] In taking this action, the Court does something that none of the parties ask it to do.   The Government does not contend that the question of mootness is so clear that dismissal at this juncture would be appropriate; all it

When petitioners originally brought this suit in 1976, they claimed that the Secretary of Health, Education, and Welfare lacked the authority to cut off federal funds to the University because of the University's relationship with Iron Arrow. In 1982, six years after the Secretary had notified the University of Miami that it was violating § 901(a) of Title IX of the Education Amendments of 1972, 86 Stat. 373, 20 U. S. C. § 1681(a), two years after a United States District Court had held that the University was violating the law, and one year after the Court of Appeals affirmed the District Court, the president of the University wrote a letter announcing that the University had "voluntarily" decided to make a change in the policy with respect to Iron Arrow that it had followed throughout the entire history of the University. That letter, and that letter alone, is the basis on which the Court holds that this case is moot.[3] The Court's position is that the University's "voluntary" decision to sever its ties to Iron Arrow irrespective of the outcome of this case deprives Iron Arrow of a stake in the outcome, and hence moots the case.

It is well settled that the voluntary cessation of allegedly unlawful conduct does not moot a case in which the legality of that conduct has been placed in issue.[4] The rationale for

---

requests is that the Court remand the case to the District Court for a *hearing* on the question of mootness. See Brief for Federal Respondents 15–16, 18.

[3] While I need not, and do not question the sincerity of the University's change of heart, it appears that petitioners do question it. The existence of a factual dispute on this point is presumably why the Government does not request that the Court simply order the case dismissed as moot, but rather that it remand the case for an evidentiary hearing. Nevertheless, the Court, without explanation, declines to follow this suggestion.

[4] See *City of Mesquite* v. *Aladdin's Castle, Inc.*, 455 U. S. 283, 289 (1982); *Allee* v. *Medrano*, 416 U. S. 802, 810–811 (1974); *DeFunis* v. *Odegaard*, 416 U. S. 312, 318 (1974) *(per curiam)*; *United States* v. *Phosphate Export Assn., Inc.*, 393 U. S. 199, 203 (1968); *Gray* v. *Sanders*, 372 U. S. 368, 375–376 (1963); *United States* v. *W. T. Grant Co.*, 345 U. S. 629, 632 (1953); *Walling* v. *Helmerich & Payne*, 323 U. S. 37, 42–43 (1944); *United States* v. *Trans–Missouri Freight Assn.*, 166 U. S. 290, 309–310 (1897). See also *Los Angeles* v. *Lyons*, 461 U. S. 95, 100–101 (1983).

this rule is straightforward: "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" *United States* v. *Phosphate Export Assn., Inc.*, 393 U. S. 199, 203 (1968) (quoting *United States* v. *W. T. Grant Co.*, 345 U. S. 629, 632 (1953)). Whenever there is a risk that the defendant will "return to his old ways," the plaintiff continues to have a stake in the outcome—its interest in not continuing to be subjected to that risk.

I am willing to assume, as does the Court, that *if this case is dismissed*, there is no risk that the University will resume its relationship with Iron Arrow. But it is exactly that fact which means this case is *not* moot.

Petitioners claim that the reason the University has ended its relationship with Iron Arrow is the Secretary's assertedly unlawful threat to terminate federal financial assistance to the University unless it severed its ties to Iron Arrow.[5] That threat continues to hang over the University's head, and could not help but influence the University's reaction should an attempt be made to persuade it to reexamine its decision to end its relationship with Iron Arrow. Petitioners assert that this continuing threat injures them because it prevents the University from reexamining its decision free from the coercive threat it now faces. That injury persists; hence, this case has not been mooted.

It is true that the letter from the president states that the University will not resume its relationship with Iron Arrow irrespective of the outcome of this suit. The Court says of the University's decision: "It is not the typical case where it could be argued that the University has taken its position only to escape the threat of an injunction." *Ante*, at 72. However, it can be argued, and petitioners do argue, that the University has taken its position only to escape the threat of

---

[5] No finding of fact has been made that this is not the case, and the Court does not purport to make such a finding.

termination of funds. We have only the University's assurance that it has made its decision voluntarily, without reference to this threat. But no such voluntary decision was made during the years preceding the Secretary's threat, and our cases make clear that a mere assurance that the cessation of activity has been "voluntary" is insufficient when the cessation occurs in response to a coercive sanction. When a defendant ceases challenged conduct because it has been sued, its mere assurance that it will not return to its old ways is insufficient to moot the case. *Quern* v. *Mandley*, 436 U. S. 725, 733, n. 7 (1978); *United States* v. *W. T. Grant Co.*, *supra*, at 632–633. Even if the defendant can demonstrate that it would be uneconomical for it to resume the challenged activity, the case is not mooted. See *United States* v. *Phosphate Export Assn., Inc.*, *supra*, at 202–204.[6] Similarly, a defendant's assurance that it discontinued the challenged activity for reasons entirely unrelated to the pendency of the suit is insufficient to moot the case. See *United States* v. *Trans–Missouri Freight Assn.*, 166 U. S. 290, 307–309 (1897). These principles apply to the University's assurance regarding its relationship with Iron Arrow. The University made its decision to end its support for Iron Arrow under threat of a coercive sanction. That decision should no more suffice to moot a case than a decision made under the cloud of a lawsuit, which, after all, is nothing more than the threat of another form of coercive sanction.[7]

---

[6] See also *Reeves, Inc.* v. *Stake*, 447 U. S. 429, 434, n. 7 (1980).

[7] The Court attempts to distinguish these cases by arguing that they only apply to defendants to lawsuits and not to nondefendants. Putting aside the fact that the University is not only a defendant, but also an indispensable party, in this lawsuit, the Court itself seems to recognize that the principles regarding voluntary cessation apply where the cessation of activity is by a third party and not a defendant. *Ante*, at 72 (citing *St. Paul Fire & Marine Insurance Co.* v. *Barry*, 438 U. S. 531, 537–538 (1978)). See also *Phosphate Export Assn., supra*, at 202–204. Moreover, the reason that the doctrine is normally applied to defendants in lawsuits is that when a defendant ceases its activity it does so under the threat of a coercive sanction. In this case, the University did just that.

We cannot know what the future might hold for the relationship between the Iron Arrow Society and the University. If Iron Arrow were permitted to litigate this case to a conclusion, and if this Court were to hold that the Secretary may not threaten to terminate federal assistance to the University because of its relationship with Iron Arrow—if this threat could no longer have any influence on the University's evaluation of the problem—the alumni membership of Iron Arrow might well be able to persuade the University to re-examine its decision. Surely our cases indicate that the University must make its decision free from any coercive influence before the case can be mooted—particularly when the successful prosecution of the litigation would end the coercion.

While I express no opinion on whether or not the University's support of Iron Arrow did violate federal law, it is clear to me that Iron Arrow is entitled to have the question decided, and that if Iron Arrow prevails, it would then be entitled to request that the University make a fresh examination of the policy question unhampered by the threat of the termination of federal funding. If it took six years for that threat to produce the 1982 decision, it is not fanciful to suggest that the University values its relationship with Iron Arrow sufficiently that it would consider reversing its decision if the threat were removed. In short, Iron Arrow continues to have a legally cognizable stake in the outcome of this case.

I respectfully dissent.