840 F.2d 68
 268 U.S.App.D.C. 188, 18 Envtl. L. Rep. 20,746
 KERR-McGEE CORPORATION, et al., Appellants,
v.
Donald P. HODEL, Secretary of the Interior, et al.
GLOBAL EXPLORATION & DEVELOPMENT CORP., Appellant,
v.
Donald P. HODEL, Secretary of the Interior.
 Nos. 86-5492, 86-5532.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 19, 1987.
Decided Feb. 19, 1988.
 
 Appeals from the United States District Court for the District of Columbia (Civil Action Nos. 83-00322 and 80-01085).
 Peter J. Nickles, with whom William P. Skinner, Washington, D.C., was on the brief, for appellants, Kerr-McGee Corp. and Kerr-McGee Chemical Corp.
 Elmo R. Hoffman, Orlando, Fla., with whom William C. Cramer, Washington, D.C., was on the brief, for appellant, Global Exploration & Development Corp.
 Dirk D. Snel, Atty., Dept. of Justice, with whom Wells D. Burgess and David C. Shilton, Attys., Dept. of Justice, Washington, D.C., were on the brief, for appellees, U.S. and Secretaries of Agriculture and the Interior.
 Thomas D. Lustig, with whom Norman L. Dean, Jr., Washington, D.C., and James T.B. Tripp, New York City, were on the brief, for appellees, Childs, et al.
 Michael Bean, Washington, D.C., entered an appearance for appellee, Environmental Defense Fund.
 James W. Sloan, Tallahassee, Fla., entered an appearance for appellee, Florida Dept. of Legal Affairs.
 Before WALD, Chief Judge, and MIKVA and FRIEDMAN*, Circuit Judges.
 Opinion Per Curiam.
 
 PER CURIAM:
 
 1
 These are consolidated appeals from a judgment of the United States District Court for the District of Columbia, dismissing suits seeking to compel the Secretary of the Interior (Secretary) to issue to the appellants leases to mine phosphate in the Osceola National Forest in Florida. 630 F.Supp. 621 (D.D.C.1986). We vacate the judgment of the district court and remand the case with instructions to dismiss the suits as moot.
 
 
 2
 * A. The background facts and legal issues involved in this case are set forth in detail in the opinion of the district court. The facts pertinent to our disposition of the appeal, however, may be briefly stated.
 
 
 3
 Most of the land in the Osceola Forest is so-called "acquired land." The Secretary's authority to grant mineral leases on such land is set forth in section 352 of the Mineral Leasing Act for Acquired Lands (Mineral Leasing Act), 30 U.S.C. Sec. 352 (1982), which provides:No mineral deposit covered by this section shall be leased except with the consent of the head of the executive department ... having jurisdiction over the lands containing such deposit ... and subject to such conditions as that official may prescribe to insure the adequate utilization of the lands for the primary purposes for which they have been acquired or are being administered.
 
 
 4
 The United States acquired most of the land in the Osceola Forest for the primary purpose of developing timber production, protecting the watershed, fish, and wildlife, and preserving and maintaining recreational opportunities. 630 F.Supp. at 622.
 
 
 5
 In the mid- to late-1960's, the appellants Kerr-McGee Corporation and Global Exploration & Development Corporation obtained from the Department of the Interior permits to prospect for phosphate in the Osceola Forest. Those permits were issued pursuant to section 9(b) of the Mineral Lands Leasing Act, 30 U.S.C. Sec. 211(b) (1982), which provides that a permittee who shows that "valuable deposits of phosphate have been discovered within the area covered by his permit ... shall be entitled to a lease for any or all of the land embraced in the prospecting permit." Those permits "were made expressly subject to all regulations, then existing or subsequently enacted, including Special Stipulations required by the Forest Service, Department of Agriculture. The Stipulations, designed to restore and protect the surface value of the land to be mined, were attached to and made a part of the permits." 630 F.Supp. at 623.
 
 
 6
 Between 1969 and 1972, the appellants alleged discovery of "valuable deposits" of phosphate on the lands the permits covered and applied to the Department of the Interior for preference right mining leases on those lands. Those applications engendered great controversy and resulted in protracted administrative proceedings before the Interior Department. The proceedings focused upon the environmental impact of phosphate mining on the Osceola Forest.
 
 
 7
 Two environmental impact statements were issued in 1974 and 1979, and in 1981 the Forest Service issued a report on methods of reclamation. All three reports were pessimistic about the ability to revegetate the mined land with native species. 630 F.Supp. at 626. In January 1983, an interagency task force the Secretary had appointed issued a report concluding that "technology capabilities were insufficient to ensure a reasonable likelihood of the successful reclamation of mined areas consistent with the requirements established for mining in Osceola." 630 F.Supp. at 626-27. The report also recommended rejecting all pending lease applications in the Osceola Forest. Id. at 627.
 
 
 8
 The Secretary of the Interior "assumed full jurisdiction over the matter and on January 10, 1983, issued his decision rejecting Kerr-McGee's and Global's lease applications." Id.
 
 
 9
 The appellants filed the present cases in the district court in May and September 1983. Their complaints sought "declaratory, mandatory, and injunctive relief to compel the Secretary of the Interior to issue preference right mining leases to [Kerr-McGee and Global] for mining phosphate in the Osceola National Forest in Florida."
 
 
 10
 B. Approximately 18 months after the original complaint in this case was filed, Congress enacted legislation that prohibits phosphate mining in the Osceola Forest. Florida Wilderness Act of 1983, Pub.L. No. 98-430, 98 Stat. 1665 (1984) (Florida Wilderness Act). Section 5 of that Act provides:
 
 
 11
 (1) The Department of the Interior shall not issue phosphate leases in the Osceola National Forest, Florida, unless and until the President transmits a recommendation to the Congress that phosphate leasing be permitted in a specified area in the Osceola National Forest....
 
 
 12
 (2) FINDINGS.--A recommendation may be transmitted to the Congress under paragraph (1) if the President finds that, based on the information available to him--
 
 
 13
 (i) there is a clear and present national need for the phosphate ... and(ii) such national need outweighs the overall public values of the public lands involved....
 
 
 14
 ....
 
 
 15
 (4) APPROVAL.--Any recommendation under this section shall take effect only upon enactment of a joint resolution of Congress approving such a recommendation.
 
 
 16
 C. On cross-motions for summary judgment, the district court granted the government's motion and dismissed the suit. The court held that "[t]o demonstrate the discovery of 'valuable deposits' of phosphates" that would entitle them to mining leases, the appellants were "required to show the economic and technological feasibility of reclaiming the lands covered by the lease applications," and that "[t]he restoration technologies necessary to insure the adequate utilization of the Osceola Forest for its primary purposes did not exist in January 1983 or in 1984, and did not exist at any earlier time." 630 F.Supp. at 629. The court concluded that the Secretary "was justified in his decision denying and disapproving the Kerr-McGee and Global lease applications." Id. at 622.
 
 
 17
 The court did not discuss the effect of the Florida Wilderness Act on this litigation or even refer to that statute.
 
 II
 
 18
 As the appellants recognized at oral argument, the Florida Wilderness Act now precludes the Secretary from issuing the mining leases they seek to obtain through these suits. That Act states that the Secretary "shall not issue phosphate leases" in the Osceola Forest unless and until (1) the President, based upon findings that "there is a clear and present national need for the phosphate" that "outweighs the overall public values of the public lands involved," recommends to Congress that phosphate leases be permitted in a specified area in the Forest, and (2) Congress by joint resolution approves the recommendation. There is no indication, or even suggestion, and the appellants do not contend, that in the foreseeable future the President is likely to make such a recommendation for the land involved in this litigation or that, if he makes such recommendation, Congress will approve it. In the present case, as in United States v. Alaska S.S. Co., 253 U.S. 113, 115, 40 S.Ct. 448, 448, 64 L.Ed. 808 (1920), "the necessary effect of the enactment of this statute is to make the cause a moot one."
 
 
 19
 The appellants argue, however, that because (1) the committee reports on the Florida Wilderness Act stated that the Act was not intended to prejudice or affect any pending litigation, and (2) government agencies "assured Congress that the legislation would not prejudice the rights of the lease applicants in any way," they "should be permitted to bring an action in the United States Claims Court for compensation for the value of the leases." To conclude that a case is moot, however, means that we lack jurisdiction to decide it, since our constitutional authority extends only to actual cases or controversies. Monzillo v. Biller, 735 F.2d 1456, 1459 (D.C.Cir.1984) (quoting Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70, 104 S.Ct. 373, 374-75, 78 L.Ed.2d 58 (1983)). We therefore have no authority to sanction the bringing of such a suit although, as noted below, our decision does not preclude the appellants from taking such action.
 
 
 20
 Accordingly, we shall follow the normal appellate practice in such cases of vacating the judgment of the district court and remanding the case with instructions to dismiss the suits as moot. Cf. United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950); Monzillo v. Biller, 735 F.2d at 1464.
 
 
 21
 Our action is without prejudice to the right of the appellants to file appropriate suits in the United States Claims Court seeking damages from the United States for the Secretary's allegedly improper denial of their applications for mining leases. We intimate no views on any aspect of such suits. To the extent such suits would involve a claim for just compensation on the theory that the enactment of the Florida Wilderness Act constituted a taking of the appellants' property rights to obtain mining leases, there would appear to be no question that such suits would be timely filed, well within the Tucker Act's six-year statute of limitations. 28 U.S.C. Sec. 2501 (1982).
 
 CONCLUSION
 
 22
 The judgment of the district court is vacated, and the case is remanded to that court with instructions to dismiss the suits as moot.
 
 
 
 *
 Of the United States Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. Sec. 291(a)