HARVEY OIL COMPANY, Plaintiff,

v.

FEDERATED MUTUAL INSURANCE
COMPANY, Defendant.

No. 2:92–CV–242.

United States District Court,
W.D. Michigan, N.D.

Oct. 19, 1993.

Eva A. Kipper, McDonald & Marin, Marquette, MI, for plaintiff.

Steven C. Kohl, Howard & Howard, PC, Bloomfield Hills, MI, for defendant.

## OPINION

ROBERT HOLMES BELL, District Judge.

In this action Plaintiff seeks damages for breach of contract and a declaratory judgment setting forth the rights and responsibilities of the parties under a pollution liability policy issued by Defendant for Plaintiff's petroleum storage facility. The parties have filed cross-motions for summary judgment.

### I.

The underlying facts are undisputed. Prior to April 9, 1990, Plaintiff, Harvey Oil Company, operated and maintained underground petroleum storage tanks at Plaintiff's property in Marquette County, Michigan. Defendant, Federated Mutual Insurance Company, insured Plaintiff from October 3, 1982, through October 3, 1986, under a general liability "occurrence" policy, Policy No. 973586. Defendant insured Plaintiff from October 3, 1986, through April 6, 1993, under Policy No. 728859, a "claims made" policy.

By notices dated July 24, 1989, and January 22, 1990, Plaintiff was informed that a new endorsement would be attached to its pollution policy which would require Plaintiff to obtain coverage under any available governmental funding program for pollution losses from petroleum storage tank systems. The notice advised that any sum payable by a governmental funding program would reduce the limits of insurance by a corresponding amount if the payment would otherwise have been made under the policy.

In a letter dated January 31, 1990, Defendant informed Plaintiff that the Michigan Underground Storage Tank Financial Assurance Fund ("MUSTFA") had been established. Defendant informed Plaintiff that Defendant's coverage was comparable to coverage available through the fund. Defendant stated that it was not Defendant's intention to compete with the MUSTFA fund and Defendant would no longer offer pollution liability coverage for underground tanks in Michigan. (Amended Complaint ¶ 39, Admitted by Defendant).

Plaintiff renewed Policy No. 728859 for the period of April 3, 1990, through October 3, 1990. Plaintiff was properly qualified for participation in MUSTFA.

Plaintiff first became aware of a pollution problem on April 6, 1990, when a monitoring well indicated that contamination was present in the groundwater. Plaintiff notified Defendant of the release in a timely manner on April 9, 1990.

Defendant refused coverage under Policy No. 973587, in part because contamination was not discovered until April 6, 1990, and

there was no evidence of a direct loss at the insured location during any policy period from October 3, 1982, to October 3, 1986.

Defendant refused coverage under No. 728859 because Plaintiff had not provided defendant with documentation to support that the leak in the underground storage tank commenced subsequent to the retroactive date of October 3, 1986.

MUSTFA has reimbursed Plaintiff for the majority of its clean-up costs to date.

## II.

Defendant has asserted two independent bases for summary judgment. Its first contention is that it is entitled to summary judgment because Plaintiff is unable to meet its burden of proving that its claim falls within the terms of the policy.

■ There is no dispute that Plaintiff bears the burden of proving that its claim falls within the terms of the policy. *See e.g., Owens–Illinois, Inc. v. Aetna Cas. & Sur. Co.,* 990 F.2d 865 (6th Cir.1993).

Policy No. 728859 does not apply to pollution incidents "commencing" prior to the retroactive date of October 3, 1986. Accordingly, in this case Plaintiff bears the burden of establishing that the release occurred on or after October 3, 1986.

Defendant filed a request for admissions requesting Plaintiff to admit that the release of petroleum products which is the subject matter of this litigation initiated after october 3, 1986. In its response dated March 29, 1993, Plaintiff stated as follows: "Neither admit nor deny, stating that after reasonable inquiry the information known or readily obtainable does not enable admission or denial."

Plaintiff's burden of proof is by a preponderance of the evidence. Plaintiff contends that it has come forward with enough evidence to create an issue of fact as to whether the leak more likely than not originated after 1986. There is evidence that when the underground tanks were tested in December 1989 the tanks tested tight, and that in 1991

a chemist gave a conditional estimate that the release was more recent than five years.[1] Plaintiff claims that this evidence is sufficient to show that the release more likely than not commenced after the retroactive date.

■ If Defendants carry their burden of showing there is an absence of evidence to support a claim then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

The evidence presented on the issue of when the release occurred is sparse. None of Plaintiff's evidence is in the form of affidavits, depositions, answers to interrogatories or admissions on file. Defendant has raised a serious issue as to whether or not the evidence is sufficient to demonstrate the existence of a genuine issue of fact for trial.

The Court, however, declines to make a ruling on this issue, finding instead that the second argument raised by Defendant is dispositive of the cross-motions for summary judgment.

## III.

Defendant's alternative contention is that even if Plaintiff could meet its burden of proving that release was initiated after the retroactive date, the coordination of benefits endorsement operates to preclude coverage.

The coordination of benefits with governmental funding programs endorsement went into effect on April 3, 1990. That provision required the Plaintiff to take all steps necessary to secure available funds from any governmental funding programs. The endorsement further provides:

> It is further agreed that any sum payable by a governmental funding program to the insured or on behalf of the insured shall reduce the Limits of Insurance shown in the Declarations by a corresponding

---

1. The opinion was conditioned on the absence of a much larger pool that replenishes the com-

pounds lost to weathering.

amount if such payment would otherwise have been made under this insurance.

In its response to Defendant's motion for summary judgment Plaintiff contends that the coordination of benefits provision does not preclude coverage because it is void and because it renders the policy illusory.

■ Plaintiff attempts to avoid the language of the endorsement by claiming that identical language was disapproved by the Michigan Insurance Commissioner and Defendant failed to take the necessary steps to secure the Insurance Commissioner's approval. Plaintiff bases its argument on the disapproval language in one of Defendant's forms, Form 5000, that is identical to the language in the Coordination of Benefits with Government Funding Programs endorsement to Policy No. 728859.

Defendant has submitted evidence that Form 5000 is not a part of the policy at issue in this case. Policy No. 728859 employs the Pollution Liability Coverage Form CG 0039, and the Coordination of Benefits with Government Funding Programs endorsement, Form CG–F–34, both of which have been approved by the Michigan Insurance Bureau. Plaintiff has come forward with no evidence that the forms used in its policy were ever disapproved by the Insurance Bureau.

The Court does not find Plaintiff's argument for voiding the endorsement convincing. Although the coordination of benefits ("COB") language in the two policies may be identical, since the underlying policy provisions are different, the Insurance Bureau's determination that the COB language was "misleading" and that it "unreasonably or deceptively" affected the risks purported to be assumed in Policy 5000, does not establish that the same language would be problematic in conjunction with Form CG 0039.

■ To the extent Plaintiff claims the COB endorsement is misleading with respect to Policy No. 728859, the Court does not agree. Under Michigan law, when a court construes insurance contracts it must first determine whether the policy is clear and unambiguous. If the language is unambiguous the court must enforce the terms of the contract as written. *Ray Industries, Inc. v.*

*Liberty Mut. Ins. Co.,* 974 F.2d 754, 759 (6th Cir.1992) (quoting *Upjohn Co. v. New Hampshire Ins. Co.,* 438 Mich. 197, 206–07, 476 N.W.2d 392 (1991)). If the policy is confusing and there are two constructions that can be placed upon it, the construction most favorable to the policyholder will be adopted. *Ray Industries,* 974 F.2d at 759 (quoting *Powers v. Detroit Automobile Inter–Ins. Exchange,* 427 Mich. 602, 623, 398 N.W.2d 411 (1986)).

■ Upon review of the entire policy the Court does not find the COB endorsement relating to coordination of benefits with governmental funding programs misleading or deceptive. The plain language of the endorsement unambiguously requires Plaintiff to secure available government funds, and further provides that sums paid by a governmental funding source will reduce the limits of insurance.

Plaintiff admits that it was advised of the COB endorsement by letter dated July 24, 1989, approximately 9 months before it renewed the policy subject to the new terms. Plaintiff also admits that it was informed by letter dated January 31, 1990, that MUSTFA had been established and that it was required to take all steps necessary to qualify for participation in MUSTFA.

In this case, MUSTFA funds of $1 million per site are available to the Plaintiff. Under the clear language of the policy MUSTFA is the primary insurer. Because the MUSTFA limits exceed the policy limits of $500,000 per pollution incident, and because MUSTFA payments reduce the policy limits, the availability of MUSTFA payments completely discharges Defendant from liability under Policy No. 728859 for the cleanup costs.

■ Plaintiff contends, in the alternative, that if the endorsement is interpreted as Defendant suggests, the policy was illusory as Plaintiff would have paid a hefty premium in exchange for no coverage.

Plaintiff's argument ignores the fact that coverage under Policy No. 728859 is broader than coverage under MUSTFA. Policy No. 728859 applies to bodily injury, property damage caused by a pollution incident and to

clean-up costs associated with environmental damage caused by a pollution incident. The pollution incident must be from an insured site or waste facility in the coverage territory. The broad language of the policy applies to releases during fuel delivery or loading, from an above-ground storage tank or from any other source. In contrast to the broad coverage of the policy, MUSTFA only covers clean-up costs relating to releases "from a petroleum underground storage tank system." MICH.COMP.LAWS § 299.805(6); MICH. STAT.ANN. § 13.29(205)(6).

## IV.

In Count I of its amended complaint Plaintiff has alleged breach of contract under two policies, No. 973587 and No. 728859. Although both parties have filed motions for summary judgment which purport to seek resolution of this entire action, neither party has addressed Policy No. 973587 in its motion or briefs.

The Court has not been provided with a copy of Policy No. 973587. All it has is Plaintiff's allegations in paragraphs 3 & 4 of its amended complaint, admitted by Defendant, that this "occurrence" policy, which was in effect from 1982 through 1986, insured Plaintiff against pollution clean-up expenses resulting from a direct loss in any one occurrence and against all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage.

Plaintiff candidly admitted at oral argument that to date Plaintiff has not become legally obligated to pay any damages. MUSTFA is covering the costs of the clean-up, and Plaintiff is still eligible for an additional $250,000 in MUSTFA funds.

Whether or not Plaintiff's damages will exceed the MUSTFA funds is speculative at this time. The Court's jurisdiction extends only to actual cases or controversies. *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70, 104 S.Ct. 373, 374–75, 78 L.Ed.2d 58 (1983). "To satisfy the Art. III case-or-controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision."

*Id.* The Court's power extends only to live cases, and not to cases that may arise in the future.

It appears from the evidence offered that Plaintiff has not yet suffered any actual injury related to the alleged breach of Policy No. 973587. Accordingly, because there is currently no case or controversy surrounding Policy No. 973587, Plaintiff's breach of contract action with respect to Policy No. 973587 must be dismissed without prejudice.

## V.

In conclusion, Defendant's motion for summary judgment with respect to Policy No. 728859 is granted, and Plaintiff's motion with respect to Policy No. 728859 is denied. To the extent Plaintiff has stated a claim for breach of contract with respect to Policy No. 973587, the claim is dismissed without prejudice.

An order consistent with this opinion will be entered.

### *ORDER AND JUDGMENT*

In accordance with the opinion entered this date,

**IT IS HEREBY ORDERED** that Defendant Federated Mutual Insurance Company's motion for summary judgment (Docket # 21) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff Harvey Oil Company's motion for summary judgment (Docket # 22) is **DENIED.**

**IT IS FURTHER ORDERED** that **JUDGMENT** of no cause of action is entered for the Defendant and against the Plaintiff on Count II of Plaintiff's complaint and on that portion of Count I which asserts a breach of contract claim as to Policy No. 728859.

**IT IS FURTHER ORDERED** that to the extent Plaintiff has asserted a breach of contract claim as to Policy No. 973587, that claim is **DISMISSED WITHOUT PREJUDICE.**