**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-4375**

———————

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

    v.

KAMRON EUGENE MILLER, SR.,

          Defendant - Appellant.

———————

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  John Preston Bailey, District Judge.  (5:21-cr-00043-JPB-JPM-1)

———————

Submitted:  August 13, 2024                    Decided:  March 12, 2025

———————

Before QUATTLEBAUM and BENJAMIN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

———————

Affirmed by unpublished per curiam opinion.

———————

**ON BRIEF:**  Stanton D. Levenson, Amy B. Levenson Jones, LAW OFFICES OF STANTON D. LEVENSON, ESQ., Pittsburgh, Pennsylvania, for Appellant.  William Ihlenfeld, United States Attorney, Jeffrey E. Parsons, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kamron Eugene Miller, Sr., pleaded guilty to six drug-distribution offenses and was sentenced to 152 months' imprisonment. Miller appeals. Finding no reversible error, we affirm.

I.

In 2015, Miller was shot multiple times, leaving him paralyzed from the waist down[1] and bound to a wheelchair. Because of his physical condition, Miller must self-administer saline enemas and stool softeners daily and self-catheterize multiple times a day. Miller needs a transfer board to move independently from bed to his wheelchair, and he requires help in dressing his lower body. Miller has had frequent urinary tract infections, and he also has a history of pressure sores that require antibiotics and regular wound cleaning and dressing.

In 2021, members of a DEA task force began investigating the activities of Miller and codefendant Andre Bundy. Using a confidential informant, the task force conducted four controlled drug purchases from Bundy. The purchases took place at a casino in New Cumberland, West Virginia. Before each sale, Bundy traveled to Miller's home in Youngstown, Ohio, to obtain the drugs for resale. *See* J.A. 154-58.

After the controlled buys, the task force searched Miller's home. The officers conducting the search found more than $60,000 in cash, as well as significant quantities of

---

[1]    Appellant's brief variously describes Miller as being paralyzed from the waist down and from the chest down. *See* Brief of Appellant at 3, 14, 18.

2

cocaine, cocaine base, and fentanyl. *See* J.A. 159, 161. The officers also found two firearms—a loaded AR-15 rifle next to Miller's bed and a loaded .40-caliber pistol under the pillow on Miller's bed. Miller was on his bed in his bedroom during the search. *See* J.A. 159-60.

Miller was arrested and detained pending trial at a regional jail within the West Virginia state jail system. Miller contends that he did not receive adequate medical care and that his physical condition began deteriorating while in the regional jail. Accordingly, he filed a motion with the district court seeking permission for and transportation to a private medical examination. Miller sought an independent assessment of his medical condition and the regional jail's ability to provide proper care. In the motion, Miller explained that he had located a physician who could see him on a Saturday or Sunday and only at his office in Fairmont, West Virginia. The district court denied the motion, noting that Miller had been evaluated at the regional jail. The court informed Miller that if he wanted an independent evaluation, he must "contact the United States Marshals Service [USMS] and start the process." J.A. 47.

Miller declined to avail himself of the USMS process and instead filed a motion seeking reconsideration. Miller contended that the USMS's lengthy process focused on an inmate's need for medical *treatment*, rather than the medical *evaluation* sought by Miller. Miller explained that he was seeking the evaluation as support for a motion he intended to file seeking review of the detention order based on the regional jail's inability to provide proper medical care. *See* J.A. 49-53. The district court denied reconsideration. *See* J.A. 55.

3

Miller subsequently pleaded guilty to all six counts in the indictment--one count of conspiracy to distribute and possession with intent to distribute 50 grams or more of methamphetamine, fentanyl, cocaine, and cocaine base; four counts of distribution of 50 grams or more of methamphetamine, and one count of distribution of fentanyl. *See* 21 U.S.C. §§ 841 & 846. The Presentence Report calculated an advisory sentencing range of 135-168 months. *See* J.A. 199. As noted, the district court sentenced Miller to 152 months' imprisonment. This appeal followed.

## II.

### A.

Miller first contends that the district court erred by refusing to facilitate Miller's request to obtain an independent medical evaluation while he was housed in the regional jail. According to Miller, the independent evaluation "would have provided a basis for [Miller's] request to be released from detention to home confinement" and would have given the district court "an independent medical opinion as to whether the BOP could provide the appropriate medical services for [Miller]." Brief of Appellant at 12. Miller argues that the lack of an independent evaluation "had a deleterious effect on his sentence, particularly with respect to explaining to the District Court his extraordinary physical condition, and the effects of pre-sentence conditions of confinement on his health and physical condition." Brief of Appellant at 13. We disagree.

Preliminarily, it appears that Miller's claims in this regard are largely moot. Miller sought the evaluation to support a (never-filed) motion seeking release from pre-trial detention in a state facility. Miller, however, has now been convicted and sentenced, and

4

he is serving his sentence at a federal low-security correctional institution in Butner, North Carolina. At this point in the proceedings, the deficiencies in the conditions of his pre-trial detention simply are not redressable through a direct appeal of his criminal conviction and sentence. *See, e.g.*, *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) ("To satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision").

Even if the claim somehow is not moot, we find no reversible error by the district court. We recognize that life inside the walls of a jail is much more difficult for inmates with health conditions like Miller's, and we are troubled by Miller's allegations of the medical care and treatment he received while in the regional jail. Nonetheless, a district court has broad discretion in managing its docket and controlling the course of pre-trial proceedings. *See, e.g.*, *United States v. Janati*, 374 F.3d 263, 273 (4th Cir. 2004). The district court directed Miller to follow the established USMS procedures for obtaining an independent medical evaluation, procedures that include a review process conducted by the USMS Office of Medical Operations. *See* J.A. 49-50. Given Miller's flat refusal to engage with the USMS process, his unsupported belief that the USMS process would be inadequate and ineffective for his needs does not make the district court's court reliance on that process improper.[2] We are aware of no authority that required the district court to grant

---

[2]      We also reject Miller's suggestion that the district court's refusal to require the USMS to transport Miller for his requested appointment with his preferred doctor affected his criminal sentence because he was unable to properly educate the court on the nature of his physical condition. The independent medical examination sought by Miller was not the only means of informing the court of the details of Miller's medical condition; (Continued)

Miller's request, and we simply cannot say that the district court abused its discretion by requiring Miller to work within the USMS's established process.

## B.

Prior to sentencing, Miller filed a motion seeking a downward departure or variance from the advisory sentencing range based on his physical condition, *see* U.S.S.G. § 5H1.4 (authorizing downward departure in cases involving "[a]n extraordinary physical impairment"), and on the cost of imprisonment compared to home detention. Miller argues on appeal that the district court committed procedural error by not ruling on the motion.

We review a criminal sentence for reasonableness, applying "a deferential abuse-of-discretion standard." *Gall v. United States,* 552 U.S. 38, 41 (2007). "A sentence is procedurally unreasonable if the district court commits a significant procedural error, such as: (1) imposing a sentence based on clearly erroneous facts; (2) failing to explain the sentence adequately; or (3) failing to address the defendant's nonfrivolous arguments." *United States v. Lewis*, 958 F.3d 240, 243 (4th Cir. 2020) (cleaned up).

We find no procedural error here. Although the district court did not explicitly refer to Miller's motion, the court noted in its Statement of Reasons explaining the sentence that it had "considered the factors set forth in Title 18 U.S.C. § 3553 and finds no reason to deviate from the advisory guidelines." J.A. 209. Moreover, it is apparent from the record

---

indeed, even without the evaluation sought by Miller, the record contains significant information about Miller's medical needs, including a report by a prison healthcare consultant detailing the health challenges Miller would face in federal prison. *See* J.A. 104-26.

that the district court adequately considered all of Miller's arguments in mitigation. The district court noted the costs of imprisonment compared to home confinement. *See* J.A. 131. The court also expressly considered Miller's physical condition but rejected that as a basis for a lower sentence after noting that Miller committed the offenses while confined to a wheelchair and concluding that the Bureau of Prisons was capable of providing Miller with adequate medical care. *See* J.A. 146 ("I . . . took into consideration the defendant's physical condition, which I believe he can receive appropriate treatment in the Bureau of Prisons, different and better than he did at the regional jail. And it's important to point out that he was in a wheelchair at the time he committed all of these crimes. He, I believe, was shot as a result of his drug activities, and that didn't deter him from being involved."). While the district court could have explained its analysis in more depth, it is apparent from the record that the court was fully aware of Miller's physical condition and medical needs but still concluded that Miller's condition did not support a variance. Accordingly, we reject Miller's claim of procedural unreasonableness. *See United States v. Nance*, 957 F.3d 204, 214–15 (4th Cir. 2020) ([W]here, as here, the record makes clear that the district court has meaningfully considered a defendant's nonfrivolous mitigating arguments, fulfilling its obligation to provide a rationale tailored to the particular case at hand and adequate to permit meaningful appellate review, we will not require more.") (cleaned up).

## C.

Miller next argues that the district court violated his Eighth Amendment rights by applying the 10-year statutory mandatory minimum term of imprisonment to him. *See* 21 U.S.C. § 841(b)(1)(A)(viii). Miller notes that the Eighth Amendment requires prisons to

7

provide inmates with adequate medical care, *see, e.g.*, *Iko v. Shreve*, 535 F.3d 225, 238, 241 (4th Cir. 2008), and he reasserts his view that the BOP is unable to provide him with the proper medical care during his incarceration. Miller thus contends that subjecting him to the mandatory minimum sentence violates the Eighth Amendment because it "prolongs [Miller's] deprivation of adequate medical care, which will lead to further physical and health deterioration." Brief of Appellant at 18. We disagree.

Although Miller alleges he received less than adequate medical care while he was held in the *state* facility as a pre-trial detainee, the district court concluded that the BOP was capable of providing proper care to Miller once he entered the federal system, and there is nothing in the record that would permit us to reject that conclusion as clearly erroneous. Because the BOP can provide adequate care, the district court's application of the mandatory minimum to Miller did not violate the Eighth Amendment.

D.

When calculating the recommended sentence for an offense involving methamphetamine, the Sentencing Guidelines distinguish between methamphetamine mixtures and purer forms of the drug by assigning a higher base offense level for "ice," which is "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity." U.S.S.G. § 2D1.1(c), n.(C). Miller contends that most meth seized now qualifies as ice and argues that the purity of the drug should no longer be used to justify a

8

harsher sentence for offenses involving meth.[3] Accordingly, Miller contends that the district court erred by rejecting his objection to using the higher offense levels when calculating his advisory sentence.

Again, we disagree. Because the Sentencing Guidelines are advisory, "district courts have discretion to reject the Ice Guidelines on policy grounds." *United States v. Williams*, 19 F.4th 374, 378 (4th Cir. 2021). "But just because you can does not mean you must. Although a sentencing court may be entitled to consider policy decisions underlying the Guidelines, including the presence or absence of empirical data, it is under no obligation to do so." *Id.* (cleaned up). Thus, while the district court had the authority to accept Miller's argument, the court did not abuse its discretion by rejecting it.

### III.

Accordingly, for the foregoing reasons, we affirm Miller's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

---

[3]     As Miller points out, some district courts have accepted this argument. *See United States v. Moreno*, 583 F. Supp. 3d 739, 743 n.4 (W.D. Va. 2019) (collecting cases).