Peter **ROSETTI** and Mary
**Doe, Plaintiffs,**

v.

**Louis W. SULLIVAN, M.D., Secretary
of Health and Human Services,
Defendant.**

**Civ. A. No. 91–3389.**

United States District Court,
E.D. Pennsylvania.

March 31, 1992.

Catherine C. Carr, Marian C. Nowell, James M. Lafferty, Thomas D. Sutton, Community Legal Services, Philadelphia, Pa., for plaintiffs.

Brian G. Kennedy, Peter Kimm, Jr., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

On March 26, 1992, Louis F. Sullivan, M.D., Secretary of Health and Human Services and the defendant in this action ("the Secretary"), released statistics revealing that over one million Americans are currently infected with the Human Immunodeficiency Virus, HIV. In February of this year alone, 209,693 people were diagnosed as having Acquired Immune Deficiency Syndrome, AIDS, a disease caused by the HIV virus which attacks the body's ability to defend against disease and infection. There is currently no cure for AIDS, which, when developed to its full-blown stage, cripples the body's immune system to the point that it is defenseless against other life-threatening diseases. Today, AIDS is fatal. The instant action focuses on Secretary Sullivan's reaction to HIV infection and AIDS in the Social Security disability context.

Plaintiffs Peter Rosetti and Mary Doe have filed a class action complaint against the Secretary in which they aver that the class,

> who are infected with the Human Immunodeficiency Virus ("HIV") and whose applications for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") disability benefits have either been denied or are pending, challenge the Secretary's failure to comply with the rule-making procedures contained in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.* The Secretary has violated the APA by failing to publish and subject to public comment the rules and policies used to determine disability for the SSDI and SSI programs for those infected with HIV.

(Plaintiff's Complaint, ¶ 1). Plaintiffs seek the following remedies: (1) a declaration that "the Secretary's failure to permit the public to participate in the rulemaking process, by promulgating rules for evaluat-

ing disability for persons with HIV in conformance with APA requirements, has harmed plaintiffs"; (2) entry of "a preliminary and permanent injunction requiring that the Secretary immediately promulgate rules for evaluating disability for persons with HIV, in full compliance with the APA"; (3) entry of "a preliminary injunction granting plaintiffs interim benefits pending the Secretary's compliance with the APA in promulgating rules for the evaluation of disability for persons with HIV"; (4) costs, disbursements, and reasonable attorneys' fees; and, (5) "such other and further relief as are [sic] just and proper." (Plaintiff's Complaint, pp. 15–16). Although not mentioned in their complaint, plaintiffs' proposed order attached to their motion for summary judgment in accordance with Rule 20(a) of the Local Rules of Civil Procedure, raises a sixth form of relief sought: reopening and readjudication of the claims of all members of the plaintiff class, in conformity with the Secretary's final regulation once submitted to notice and comment.

The Secretary has filed a Suggestion of Mootness, and a Motion for Judgment on the Pleadings, or, in the Alternative, for Summary Judgment. The plaintiffs oppose the Secretary's motions and have filed a Cross-motion for Summary Judgment. Plaintiffs have also filed a Motion for Class Certification, and proposed intervenors Sharon Brown and John Roe have filed Motions to Intervene. The Court, in its Order of March 13, 1992, dismissed plaintiffs' Motion for Class Certification and the Motions to Intervene of Sharon Brown and John Roe without prejudice to those parties renewing said motions by letter to the Court in the event the Court denies the government's Suggestion of Mootness and Motion for Judgment on the Pleadings, or, in the Alternative, for Summary Judgment. The Court will, however, treat those motions as pending to the extent relevant to the analysis herein.

## I. Introduction

In *Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), the Supreme Court explains the administrative system through which the Federal Government provides Social Security benefits to disabled persons. That explanation is summarized here to provide a background to plaintiffs' claims.

Disability benefits are administered by the Social Security Administration (SSA) through two distinct programs, the Social Security Disability Insurance Program (SSDI) and the Supplemental Security Income Program (SSI). SSDI pays benefits to disabled persons who have contributed to the program and who suffer from a mental or physical disability. SSI provides benefits to indigent disabled persons.

> Both statutes define "disability" as the "inability to engage in any substantial gainful activity...." §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual is found to be under a disability only if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." §§ 423(d)(2)(A), 1382c(a)(3)(B).

*Bowen v. City of New York*, 476 U.S., at 470, 106 S.Ct., at 2025.

The Supreme Court goes on to explain that regulations governing the eligibility of persons for SSDI and SSI benefits are promulgated by the Secretary pursuant to a legislative grant of authority. 42 U.S.C. § 405(a). The Secretary has developed a five-step "sequential evaluation" to determine claimants' eligibility for benefits.

In Step one, the agency determines whether the claimant is currently engaged in "substantial gainful activity." Claimants engaged in substantial gainful activity are denied benefits at Step one. If not engaged in such activity, the claimant proceeds to Step two, wherein the Secretary determines whether the impairment upon which the claimant's claim for benefits is based is "severe"—*i.e.*, one that significantly limits claimant's physical or mental ability to do basic work activities. Claim-

ants with impairments determined not to be severe are denied benefits at Step two.

If the claimant is not engaged in substantial gainful activity and suffers from a severe impairment, in Step three his or her impairment is evaluated to determine whether it "meets or equals" any of impairments set forth in the "Listing of Impairments" contained in subpart P, appendix 1, of the regulations, 20 CFR §§ 404.1520(d), 416.920(d). The Listing of Impairments is compiled by the Secretary and consists of impairments acknowledged by the Secretary to be of sufficient significance to preclude gainful employment. If a claimant's impairment "meets or equals" one of the listed impairments, he or she is determined to be presumptively entitled to benefits. This presumption of disability and therefore of entitlement to benefits is a positive presumption, shortening the process for claimants with listed impairments. Failure of a claimant's impairment to appear in the Listing of Impairments does not raise a presumption against disability or against entitlement to benefits. Rather, claimants not found presumptively disabled in Step three move on to Steps four and five, which involve a more individualized analysis of the claimant's impairment.

In Step four, the claimant's "residual functional capacity" is measured in order to determine his or her ability to engage in basic employment activities. If, based on a claimant's residual functional capacity, he or she is determined to be capable of performing whatever work he or she did prior to the onset of impairment, the Secretary will deny benefits. If, on the other hand, the claimant is determined incapable of returning to his or her former work, the analysis proceeds to the fifth and final step. Step five determines whether a claimant is capable of doing work other than that in which he or she was engaged prior to the onset of impairment. In making this determination, the Secretary considers the claimant's residual functional capacity, age, education, and work experience. If the Secretary determines that the claimant has the capacity to do other work, benefits are denied; if not, benefits are awarded.

All determinations are made by state agencies acting under the Secretary's authority and are reviewed by the regional and central offices of the Social Security Administration. If, on review of a claim, the state agency is determined to have erred, the case is returned to the state agency for correction.

The *Bowen* Court further explains that claimant-initiated review of the state agency's evaluation consists of three levels. If at any stage of the five-step sequential evaluation a claimant is denied benefits, the claimant is first afforded a *de novo* reconsideration by the state agency. If not satisfied after reconsideration, the claimant is next entitled to a hearing before an administrative law judge with the Social Security Administration's Office of Hearings and Appeals. 42 U.S.C. § 405(b)(1). Finally, claimants can have adverse administrative law judge determinations reviewed by the Appeals Council. Until a claim is presented for review to the Appeals Council, a claimant's administrative remedies are not considered to have been exhausted. Upon an adverse determination by the Appeals Council, a claimant has exhausted his or her administrative remedies and may seek judicial review in the federal district courts pursuant to 42 U.S.C. § 405(g).

## II. Plaintiffs' Complaint

The crux of plaintiffs' complaint involves Step three of the sequential evaluation. In Step three, a claimant's impairment is evaluated to determine whether it "meets or equals" any of impairments set forth in the "Listing of Impairments." 20 CFR §§ 404.1520(d), 416.920(d), subpart P, appendix 1. Plaintiffs allege that neither AIDS nor HIV infection are among the approximately 120 impairments contained in the Secretary's Listing of Impairments. Plaintiffs claim, however, that the Secretary has issued instructional materials regarding HIV infection and AIDS to his federal and state employees involved in the evaluation of claims. Plaintiffs allege that these materials, issued in a compilation referred to as the Program Operation Manual System ("the POMS") or in the form of

Social Security Rulings, have created substantive rules and policies of the Secretary which recognize AIDS and HIV infection as disabling, and set forth specific standards which are to be considered by evaluators as equivalent to "meeting or equaling" a listing in the Listing of Impairments. Neither the Social Security Rulings nor POMS are automatically subject to the public notice and comment requirements of the Administrative Procedures Act.

Plaintiffs essentially contend that the Secretary has issued, in the form of POMS and Social Security Rulings, rules and policies creating a *de facto* "listing" for AIDS and HIV infection without fulfilling the notice and comment requirements of the Administrative Procedures Act. Plaintiffs claim that by setting forth rules and policies for the evaluation of AIDS and HIV infection in POMS and Social Security Rulings which are "equivalent" to a Listing of Impairment, the Secretary has violated the APA by creating what is, in effect, a substantive regulation without fulfilling the notice and comment requirement to which formal listings are subject.

Plaintiffs seek to compel notice and comment as a means to express their dissatisfaction with the Secretary's current rules and policies in connection with AIDS and HIV infection, and to participate in the creation of new rules. A primary focus of plaintiffs' criticism of the Secretary's current treatment of AIDS and HIV infection in the evaluative process is the Secretary's definition of AIDS. Plaintiffs' allege that the Secretary's current definition of AIDS is derived from the Centers for Disease Control's definition ("CDC"). Plaintiffs contend that the CDC's definition of AIDS, and the epidemiological data upon which it is based, is deficient in that it focuses on a "predominantly affluent group of white male homosexuals," and that therefore "most of the epidemiological data collected by the CDC reflect the opportunistic infections which were typical of that particular population subgroup." (Plaintiff's complaint, ¶ 31). Plaintiffs allege that increasing numbers of individuals more recently diagnosed with HIV infection, and increasing numbers of those dying from HIV-related illness, are "women, current and former intravenous drug users, children, and poor people. The survival time between diagnosis and death is much shorter when the HIV virus is manifested in women and persons of color." (Plaintiff's complaint, ¶ 32). Plaintiffs seek an opportunity to formally present to the Secretary medical evidence and opinion that "the CDC definition, based on studies which exclude intravenous drug users, women, children, and poor people generally, excludes many of the most common manifestations of HIV-related disease in these populations." (Plaintiff's complaint, ¶ 33).

At bottom, plaintiffs present the Court with the question of whether the Secretary's use of the Program Operation Manual System ("the POMS") and Social Security Rulings to establish evaluative rules and policies in connection with AIDS and HIV infection, instead of promulgating a formal regulation and listing, deprives plaintiffs of formal notice and an opportunity to comment on those rules and policies, in violation of the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment. (Plaintiff's complaint, ¶ 14b). However, before the Court can take up the substance of this and other issues presented by plaintiffs' complaint, the Court must address the Secretary's challenges to this Court's jurisdiction contained in his Motion for Judgment on the Pleadings, or, in the Alternative, for Summary Judgment, and in his Suggestion of Mootness.

## III. Jurisdiction

In their complaint, plaintiffs assert three bases for this Court's jurisdiction: (1) 28 U.S.C. § 1331—federal question jurisdiction; (2) 28 U.S.C. § 1361—mandamus jurisdiction; and (3) 42 U.S.C. § 405(g)—jurisdiction based on "waiver" of the exhaustion requirement. The Secretary challenges all three bases in his Motion for Judgment on the Pleadings, or, in the Alternative, for Summary Judgment. The Court will address each separately.

### A. *Federal Question Jurisdiction*

■ Although plaintiffs appear to have abandoned federal question jurisdiction in their recent briefs, the Court notes that the third sentence of § 405(h) of the Social Security Act provides: "No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h). Section 405(g) is the sole avenue for judicial review of "any claim arising under" the Social Security Act. *Heckler v. Ringer*, 466 U.S. 602, 614–15, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984).

■ The Supreme Court, in *Weinberger v. Salfi*, concluded that, whether labeled constitutional, substantive or procedural, a plaintiff's claims cannot be brought in the United States District Court pursuant to § 1331 where they arise under the Social Security Act, but rather, must rest on a jurisdictional basis under the Act. 422 U.S. 749 at 760–61, 95 S.Ct. 2457 at 2464–64, 45 L.Ed.2d 522 (1975). As plaintiff's claims *sub judice* clearly arise under the Social Security Act, federal question jurisdiction pursuant to § 1331 is inappropriate.

### B. *Mandamus Jurisdiction*

Although the United States Supreme Court has not yet ruled on the issue, the Court of Appeals for the Third Circuit, has held that section 405(h) of the Social Security Act does not preempt mandamus jurisdiction under § 1361, and that, therefore, "at least in some cases, section 1361 jurisdiction is available to review SSA procedures." *Kuehner v. Schweiker*, 717 F.2d 813, 826 (3d Cir.1983) (Becker, J. concurring); *Liberty Alliance of the Blind v. Califano*, 568 F.2d 333 (3d Cir.1977); *see also Ellis v. Blum*, 643 F.2d 68 (2d Cir. 1981) (Friendly, J.).

"The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984). The nondiscretionary duty plaintiffs seek to compel the Secretary to perform is compliance with the notice and comment rulemaking procedures of the Administrative Procedures Act (APA).

■ Sections 553(b) and (c) of the APA provide in pertinent part that, "[g]eneral notice of proposed rule making shall be published in the Federal Register," and "[a]fter notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without the opportunity for oral presentation." *Bailey v. Sullivan*, 885 F.2d 52, 62 (3d Cir.1989). The notice and comment procedure of the APA is a nondiscretionary duty of the Secretary in connection with "substantive" rules, but is not required with respect to "interpretive" rules. *Bailey v. Sullivan*, 885 F.2d 52, 62 (3d Cir.1989); *First State Bank of Hudson County v. United States*, 599 F.2d 558, 564 (3d Cir.1979).

> "Interpretative rules are those which merely clarify or explain existing law or regulations." *Powderly v. Schweiker*, 704 F.2d 1092, 1098 (9th Cir.1983). "They express the agency's intended course of action, its tentative view of the meaning of a particular statutory term, or internal house-keeping measures organizing agency activities,...." *Batterton v. Marshall*, 648 F.2d 694, 702 (D.C.Cir. 1980). By contrast, substantive rules "grant rights, impose obligations, or produce other significant effects on private interests," *id.*, at 701–02.

*American Ambulance Service v. Sullivan*, 911 F.2d 901, 907 (3d Cir.1990).

■ Plaintiffs' complaint alleges that the Secretary has created through POMS and Social Security Rulings "rules used to determined disability for those infected with AIDS," (Complaint, ¶ 14(b)), and that "the Secretary has issued both Rulings and POMS which recognize AIDS and HIV infection as disabling, and set specific standards for the disease which, if met, are to be considered *equivalent* to meeting or

equaling a properly promulgated Listing in the Listings of Impairments at 20 C.F.R. Part 404 Subpart P, Appendix 1." (*Id.*, at ¶ 35). These allegations, if found to be true, could demonstrate that the Secretary is operating under substantive rules and policies which he has failed to submit to the nondiscretionary mandate of notice and comment under the Administrative Procedures Act. If the alleged rules and policies upon which plaintiffs seek to comment in fact exist, they are substantive in that they produce "significant effects on private interests" by allowing some claimants to receive benefits at a relatively early stage of the Secretary's sequential evaluation (Step three), while forcing others to endure Steps four and five of the process, and potentially three levels of intra-agency appeal. The significance of obtaining presumptive benefits at Step three particularly affects the interests of the proposed class since by definition they suffer from a fatal, currently incurable disease, and since by definition many suffer from the tremendous limitations of poverty as well.

■ In short, plaintiffs have alleged that the Secretary has failed to follow the nondiscretionary requirements of the APA that all substantive rules created by agencies be submitted to notice and comment pursuant to § 553. As plaintiffs are unable to compel APA notice and comment through the Secretary's administrative scheme, there exist no administrative remedies. Accordingly, plaintiffs allege an appropriate basis for mandamus jurisdiction in connection with their Administrative Procedures claim.

■ On the other hand, plaintiffs also seek interim benefits and reopening and readjudication of the claims of all members of the plaintiff class. These claims are not subject to mandamus jurisdiction as they are inextricably intertwined with each individual's claim for benefits. There is no evidence that, in seeking benefits on an individual basis, exhaustion of existing agency remedies would be futile as to any class member. Both of the class representatives received favorable rulings on benefits after their hearings, as did one of the proposed intervenors. The second pro-

posed intervenor has yet to have a hearing. In such a case, with other viable remedies for individual benefits available, the invocation of mandamus jurisdiction is contrary to the purpose of 28 U.S.C. § 1361.

Accordingly, the Court has determined that plaintiffs have alleged an appropriate basis for mandamus jurisdiction pursuant to § 1361 to the extent that plaintiffs seek to compel the Secretary to subject substantive rules and policies regarding the evaluation of disability caused by AIDS or HIV infection to notice and comment procedures under the APA. Mandamus jurisdiction is not proper with respect to plaintiffs claims for interim benefits or readjudication of individual plaintiffs' claims.

C. *"Waiver"*

■ Section 405(g) of the Social Security Act requires that a claimant exhaust his or her administrative remedies by proceeding through all three stages of the administrative appeals process, described above, and thereby obtaining a "final decision of the Secretary."

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise and to compile a record which is adequate for judicial review.

*Weinberger v. Salfi*, 422 U.S. at 765–66, 95 S.Ct. at 2467. The above goals are satisfied in most cases by requiring that the Secretary issue a "final decision" before federal judicial review is permitted.

The United States Supreme Court has interpreted the "final decision" requirement of § 405(g) to consist of both "a nonwaivable requirement that a 'claim for benefits shall have been presented to the Secretary,' *Mathews v. Eldridge*, 424 U.S., [319] at 328, 96 S.Ct., [893] at 899 [47 L.Ed.2d 18 (1976) ], and a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant. *Ibid.*" Plaintiffs, by the

definition of the class in the complaint, have each satisfied the first, nonwaivable "presentment" requirement. None of them have satisfied the second, waivable "exhaustion" requirement, and therefore urge the Court to hold them excused from further exhaustion and to exercise jurisdiction under § 405(g).

The Supreme Court has permitted "waiver" of § 405(g)'s exhaustion requirement where the Secretary himself has determined that further exhaustion is futile. *See, e.g., Mathews v. Diaz*, 426 U.S. 67, 76–77, 96 S.Ct. 1883, 1889–90, 48 L.Ed.2d 478 (1976); *Weinberger v. Salfi*, 422 U.S., at 766–767, 95 S.Ct., at 2467–68. Additionally, the Supreme Court has "recognized that in certain special cases, deference to the Secretary's conclusion as to the utility of pursuing the claim through administrative channels is not always appropriate," and that despite the Secretary's objection, the exhaustion requirement should be, in effect, excused by the court. *Heckler v. Ringer*, 466 U.S., at 618, 104 S.Ct., at 2023. Such cases arise (1) where the asserted cause of action is "wholly 'collateral'" to plaintiff's claim for benefits, *id.*, (2) where the harm caused plaintiff by having to exhaust the administrative processes is irreparable, and (3) where, as a result, exhaustion becomes futile. The clearest examples of cases in which the exhaustion requirements of § 405(g) are excused are those in which the plaintiffs present constitutional issues which are clearly beyond the Secretary's power to address through the administrative process. *See, e.g., Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977).

In the instant case, there can be no question that the Secretary has not waived exhaustion, but instead, vigorously insists on it. Thus, plaintiffs' only resort is to those "certain special cases" in which courts excuse exhaustion despite the Secretary's objections, upon a sufficient showing of (1) a collateral proceeding, (2) irreparable harm, and (3) futility of further exhaustion. *Kuehner v. Schweiker*, 717 F.2d 813, 822–23 and 827 (3d Cir.1983) (Becker, J. concurring).

With respect to plaintiffs' APA claims, the Court has already determined that it has jurisdiction pursuant to 28 U.S.C. § 1361. Judge Becker, in his concurrence in *Kuehner v. Schweiker*, remarks that there is "little practical difference in a case such as this between the two jurisdictional bases [mandamus and § 405(g)], as both are informed by the same policy considerations." 717 F.2d at 827. In the instant case, as in *Kuehner*, the Court considers the same policies in determining whether to exercise jurisdiction pursuant to § 405(g) as considered in connection with § 1361 jurisdiction. Again, the Court has determined that plaintiffs' APA claims are not subject to resolution through the Secretary's administrative process and, as such, are collateral to any individual plaintiff's claim for benefits, and concomitantly, are not subject to exhaustion. The irreparable harm question presents somewhat more of a challenge under the facts before the Court, since there has not yet been a class representative or proposed intervenor who has been denied benefits after a final decision of the Secretary. However, the delay caused by claimants having to proceed through additional steps of the sequential evaluation process and having to endure a three tiered intra-agency appeal process can unquestionably result in irreparable harm considering that the claimants affected cannot work, suffer from an incurable, fatal disease, and are for the most part indigent.

Furthermore, to the extent that plaintiffs' allege that the Secretary's avoidance of notice and comment has violated the Due Process Clause of the Fifth Amendment, (Plaintiff's complaint, ¶ 14b), they assert a constitutional claim not generally subject to the Social Security Act's exhaustion requirement in § 405(g). *See Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977); *Liberty Alliance*, 568 F.2d at 345–46.

On the other hand, plaintiffs' claims for interim benefits or readjudication of individual plaintiffs' claims are not collateral to any individual's claim for benefits, nor are

they the type of claims that render exhaustion futile.

Accordingly, plaintiffs' claims for interim benefits and readjudication will be dismissed as this court lacks any basis for subject matter jurisdiction over them. However, plaintiffs' claim in connection with the Secretary's violation of the Administrative Procedures Act will proceed as a result of this Court's jurisdictional bases pursuant to 28 U.S.C. § 1361 and pursuant to 42 U.S.C. § 405(g).

## IV. Mootness

■ The Secretary contends that, as a result of his publishing in the *Federal Register* for public comment proposed rules for evaluating disability in connection with HIV infection and AIDS, the instant case is moot.

■ Federal courts lack jurisdiction to decide moot cases because their constitutional authority under Article III extends only to actual cases or controversies. *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983). That the dispute between the parties was "very much alive when suit was filed ... cannot substitute for the actual case or controversy that an exercise of this Court's jurisdiction requires." *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). Rather, "a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision," *Iron Arrow Honor Society*, 464 U.S., at 70, 104 S.Ct. at 375.

On December 18, 1991, the Secretary published in the *Federal Register* for public comment proposed rules governing the determination of disability in connection with persons infected by the HIV virus, including those who have developed AIDS. 56 Fed.Reg. 65702–16 (December 18, 1991). The summary introducing the proposed regulations reads in relevant part as follows:

> **SUMMARY:** We are proposing, in the Listing of Impairments in appendix 1 of 20 CFR part 404, subpart P, to establish a new listing section called "Immune System" that will include up-to-date criteria for evaluation of connective tissue diseases, which are now contained in the "Multiple Body Systems" listing, and to establish a listing for the evaluation of human immunodeficiency virus (HIV) infection.

The Secretary invites comments on the proposal, to be received no later than February 18, 1992.

The Secretary goes on to explain *inter alia:*

> As more information about HIV infection became available and as we increased our adjudicative experience, it became apparent that HIV infection was being manifested by severe impairments that were not encompassed in the Centers for Disease Control's criteria. By 1987, the Social Security Administration issued instructions that provided specific criteria beyond those covered in the Centers for Disease Control's definition for our use in evaluating whether a claimant's impairment(s) is at listing-level severity.

> Additionally, we have recently revised and reissued our HIV criteria to reformat the opportunistic infections by type (e.g., viral, fungal, bacterial, protozoan, etc.), thereby making the criteria easier to apply, to include additional criteria to take into account the clinical manifestations and course of the disease in women and children,.... We have also realigned and added certain manifestations of HIV infection which when paired with functional restrictions result in listing-level severity.

> The proposed part A listing, like our existing instructions, recognizes that HIV infection can manifest itself differently in women than in men. Therefore, the proposed listing states that it is important when reviewing the claim of a woman with HIV infection that gynecological problems be considered in assessing the degree of functional impairment. The proposed part B listing, like our existing instructions, recognizes that the disease process may also manifest itself differently in younger children (i.e., un-

der age 13) as compared to older children (i.e., age 13 and over).

Thus, the HIV infection listings included in this proposed rule set out our procedures for determining whether an HIV-positive claimant's impairments are of listing-level severity. To enable us to issue timely decisions as the knowledge of the HIV disease process has evolved, the Social Security Administration has published HIV criteria in the past in procedural instructions. In 1987, we published in the *Federal Register* our intent to publish a proposed listing for AIDS/HIV infection. This proposed listing provides the public with the opportunity to comment formally on our HIV criteria.

56 Fed.Reg. 65702–65704.

By promulgation of the proposed regulation and by accepting public comment on the proposal, the Secretary has provided to plaintiffs a large portion of the relief sought over which this Court has jurisdiction. Clearly, to the extent that plaintiffs seek in their complaint promulgation of a proposed rule and notice and comment, those issues are now moot. It is similarly clear that, should the Secretary promulgate a final rule in compliance with the requirements of the APA for such rules, all of plaintiffs' claims over which this Court has jurisdiction will be mooted. This Court agrees with the Court of Appeals for the District of Columbia, which stated in *Natural Resources Defense Council, Inc. v. U.S. Nuclear Regulation Commission,* that "[c]orrective action by an agency is one type of subsequent event that can moot a previously justiciable issue." 680 F.2d 810, 814 (D.C.Cir.1982). However, the corrective action in *Natural Resources* which was found to moot plaintiff's APA notice and comment claim was promulgation of a *final* regulation. In the instant case, no final regulation has yet been promulgated. Thus, the context in which plaintiffs' claims now lie raises a question of fact as to whether, as plaintiffs' complaint alleges, the Social Security Administration is currently evaluating claimants with HIV infection and AIDS on the basis of substantive rules and policies which have not been sub-ject to the notice and comment requirements of the APA.

■ Although the Court may not be jurisdictionally empowered to compel the Secretary to exercise his discretion, it can enjoin the Secretary from evaluating disability claims on the basis of invalid substantive rules. The Third Circuit has recognized that "an agency rule that violates the APA may not be afforded the 'force and effect of law.'" *E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 981 (3d Cir.1988), *citing Chrysler Corp. v. Brown,* 441 U.S. 281, 313, 99 S.Ct. 1705, 1723, 60 L.Ed.2d 208 (1979). In effect, rules violating the Administrative Procedure Act are void. *W.C. v. Bowen,* 807 F.2d 1502, 1505 (9th Cir.1987). If the Secretary is currently evaluating the disability claims of people with HIV infection and AIDS on the basis of void rules (i.e., substantive rules which have not been submitted to notice and comment), it is certainly within the scope of this Court's equitable injunctive powers to prevent him from continuing to do so. Members of the proposed class may still be suffering an "actual injury" in that their claims are being evaluated pursuant to void rules and policies. In such a case, there exists an "actual injury that can be redressed by a favorable judicial decision," thereby precluding a finding of mootness. *Iron Arrow Honor Society,* 464 U.S., at 70, 104 S.Ct. at 375. Thus, an issue of fact exists as to whether the Secretary is currently operating under substantive rules and policies which have not been subjected to the notice and comment requirements of the APA. This Court will hold a hearing on May 11, 1992, in order to determine whether the Secretary is currently operating under substantive rules and policies which have not been subjected to the notice and comment requirements of the APA, or whether the plaintiffs' APA claims have been mooted as a result of the Secretary's promulgation of proposed rules and policies for the evaluation of HIV infection and AIDS which have been subject to notice and comment.

## V. Conclusion

The profound seriousness of the AIDS epidemic and the imperative need for a cogent approach to the evaluation of the disability and impairments caused by HIV infection and AIDS compel this Court to urge the Secretary to expediently address the concerns of the plaintiffs by promulgating final regulations in connection with the issues raised herein. Such regulations will not only provide claimants with HIV infection or AIDS a reliable framework for assessment of their claims, but will also provide a meaningful expression of national empathy for those infected with HIV. As pointed out in the Secretary's proposed regulation, *supra.*, p. 1389–90, the Secretary first announced his intent to promulgate appropriate regulations for the evaluation of HIV infection and AIDS claims in 1987. Today, in 1992, the frightening increase in the proliferation of the HIV virus has made such regulations long over due.

Accordingly, for the reasons stated herein, (1) the Secretary's Motion for Judgment on the Pleadings, or, in the Alternative, for Summary Judgment will be granted insofar as it applies to plaintiffs' failure to exhaust administrative remedies in connection with their claims for interim benefits and readjudication, and plaintiffs' claims for interim benefits and readjudication will be dismissed for lack of subject matter jurisdiction, the Secretary's Motion for Judgment on the Pleadings will be in all other respects denied, (2) plaintiffs' Cross-motion for Summary Judgment will be denied, and (3) with respect to the Secretary's Suggestion of Mootness, the parties will be ordered to appear in Courtroom 10–B of the United States Courthouse, 601 Market Street, Philadelphia on May 11, 1992, at 9:30 a.m. for a hearing to determine whether the Secretary is currently operating under substantive rules and policies which have not been subjected to the notice and comment requirements of the APA.