The CITY OF VIRGINIA BEACH,
VIRGINIA, a municipal
corporation, Plaintiff,

v.

Ronald H. BROWN, Secretary of Commerce, D. James Baker, Under Secretary of Commerce, and The State of North Carolina, Defendants.

Action No. 2:93cv1232.

United States District Court,
E.D. Virginia,
Norfolk Division.

June 15, 1994.

Michael Scott Hart, George A. Somerville, John Franklin Kay, Jr., Samuel Morton

Brock, III, Mays & Valentine, Richmond, VA, Eric W. Schwartz, Alan Dale Albert, Mays & Valentine, Norfolk, VA, Leslie Louis Lilley, William M. Macali, Office of City Atty., Virginia Beach, VA, for plaintiff.

George M. Kelley, III, Asst. U.S. Atty., Norfolk, VA, Lois J. Schiffer, Catherine M. Shaefor, Samuel C. Alexander, U.S. Dept. of Justice, Washington, DC, for defendants Ronald H. Brown and D. James Baker.

Kenneth M. Lyons, Sonnenschein, Nath & Rosenthal, Frederick M. Lowther, Bernard Nash, Lee A. Alexander, David L. Engelhardt, Dickstein, Shapiro & Morin, Washington, DC, Michael F. Easley, Alan S. Hirsch, Daniel F. McLawhorn, N.C. Dept. of Justice, Raleigh, NC, Prof. Michael Vincent Hernandez, Chesapeake, VA, for intervenor-defendant State of N.C.

Jan Leslie Proctor, Asst. City Atty., Ronald Stuart Hallman, Office of City Atty., Chesapeake, VA, for The City of Chesapeake, Virginia, amicus curiae.

Roger L. Chaffe, John Paul Woodley, Jr., Deputy Atty. Gen., Dennis Henry Treacy, Office of the Atty. Gen. of Virginia, James Stuart Gilmore, III, Atty. Gen. of Virginia, Richmond, VA, for Com. of Va., amicus curiae.

Patrick Michael McSweeney, McSweeney, Burtch and Crump, Richmond, VA, for Roanoke River Basin Ass'n, amicus curiae.

Kimberly Ann Taylor, Grafton, VA, Kenneth D. Goldberg, Office of Atty. Gen., Dept. of Community Affairs, Florida Coastal Management Program, Tallahassee, FL, for State of Fla., amicus curiae.

Kimberly Ann Taylor, Grafton, VA, Bruce M. Botelho, Elizabeth J. Kerttula, Office of Atty. Gen., State of Alaska, Dept. of Law, Juneau, AK, for State of Alaska, amicus curiae.

Kimberly Ann Taylor, Grafton, VA, for State of Conn., State of Me., State of Md., State of Miss., State of N.J., State of N.Y., State of S.C. and California Coastal Com'n, amicus curiae.

## OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

### I. Facts and Procedural History

This case arises out of a city's attempts to clear the numerous bureaucratic hurdles necessary to build a pipeline. Virginia Beach, a municipality, has faced severe water shortages and mandatory water restrictions over the past few years due to the fact that it owns no water of its own. Currently, Virginia Beach obtains water from the City of Norfolk; however, Virginia Beach has come to believe that the amount of water Norfolk will sell it will be insufficient in the future.[1] Therefore, Virginia Beach, in 1983, proposed to build a pipeline from Lake Gaston, a body of water that is located partially in Virginia and partially in North Carolina, to Virginia Beach in order that Virginia Beach might have its own water supply.

Since Virginia Beach announced its proposed pipeline, the State of North Carolina has tried to derail the project.[2] After failing to block the issuance of permits to Virginia Beach by the Army Corps of Engineers in the federal courts in North Carolina, North

---

1. The parties disagree about whether, in fact, Virginia Beach will face water shortages without the proposed pipeline. Since this issue is not material to this dispute, the court will not resolve it.

2. A number of published opinions have resulted from North Carolina's failed attempts to block the permits issued by the Army Corps of Engineers alone. See North Carolina v. Hudson, 665 F.Supp. 428 (E.D.N.C.1987) (Hudson I); North Carolina v. Hudson, 731 F.Supp. 1261 (E.D.N.C. 1990) (Hudson II), aff'd, Roanoke River Basin Ass'n v. Hudson, 940 F.2d 58 (4th Cir.1991) (Hudson III), cert. denied, — U.S. —, 112 S.Ct. 1164, 117 L.Ed.2d 411 (1992). Other cases

involving this project include: North Carolina v. Virginia Beach, 951 F.2d 596 (4th Cir.1991) (allowing "critical path" construction to proceed while litigation was ongoing); Virginia Beach v. Roanoke River Basin Ass'n, 776 F.2d 484 (4th Cir.1985) (North Carolina governor not subject to Virginia's long arm jurisdiction in litigation over the Corps permits); Virginia Beach v. Mecklenberg County, 246 Va. 233, 435 S.E.2d 382 (1993) (Virginia Beach's water storage contract not subject to local consent requirements of Virginia law); Tidewater Ass'n of Home Builders, Inc. v. Virginia Beach, 241 Va. 114, 400 S.E.2d 523 (1991) (upholding city fee imposed to pay for pipeline).

Carolina took action under the CZMA (Coastal Zone Management Act) in 1991. This latest action occurred when Virginia Beach and the Virginia Electric Power Company ("Virginia Power") asked the Federal Energy Regulatory Commission ("FERC") to approve a change in the Lake Gaston hydroelectric project.[3] North Carolina then applied to Ocean and Coastal Resource Management ("OCRM")[4] for permission to review the pipeline project for consistency with North Carolina's coastal management plan.[5] OCRM replied that the state could review Virginia Beach's plan without permission.[6] Therefore, the city was required to certify that the pipeline would comply with the North Carolina Coastal Management Plan ("NCCMP"). It did so, and North Carolina objected. The effect of such an objection was to prevent the issuance of the FERC approval, unless North Carolina's objection was overruled by the Secretary of Commerce.

Virginia Beach appealed to the Department of Commerce ("Commerce"). Commerce is the agency responsible for the CZMA and has the power to overrule objections by states for limited reasons. However, Commerce does not review a state's determination as a matter of fact that the proposed project does not comply with the state's program. One of Virginia Beach's objections was that North Carolina should not be allowed to review an activity that was occurring wholly in Virginia. At this time, two opposing views had been taken on the subject of interstate review. NOAA, the agency within Commerce directly responsible for the CZMA, said that such review should be allowed. However, the Department of Justice ("Justice") issued an opinion that said that interstate review should not be allowed. The then Secretary of Commerce, Secretary Barbara Franklin, agreed with Justice on December 3, 1992. In essence, she said that the review never should have happened in the first place; thus, the appeal was simply terminated.

In early 1993, North Carolina asked the new Secretary of Commerce, Secretary Ronald Brown, to reconsider Secretary Franklin's decision. Secretary Brown consulted Justice, which advised him that its previous opinion still stood. Therefore, Secretary Brown declined to change the ruling; on July 30, 1993, he denied North Carolina's motion for reconsideration. North Carolina then filed suit in the United States District Court for the District of Columbia. While that case was in the early stages, on December 14, 1993, the Department of Justice issued a letter "withdrawing" its previous opinion. Secretary Brown, left with only one opinion on the matter, decided to follow the opinion of NOAA and allow interstate review. Therefore, he reopened the agency appeal. The case in the district court was dismissed.

After that dismissal, Virginia Beach brought suit in this court against Secretary Brown and Under Secretary Baker ("the federal defendants") on December 23, 1993, and North Carolina intervened as a defendant on January 12, 1994. Plaintiff sought a declaratory judgment holding, in part, that the reopening of the appeal was invalid and that interstate review was not allowed under the CZMA. The defendants submitted motions to dismiss, and all parties submitted motions for summary judgment. The court also re-

3. Because the Lake Gaston hydroelectric project is operated to generate electricity by Virginia Power under a license from FERC, FERC approval is needed for Virginia Beach to take water from the lake. According to the city, the FERC approval is the last federal action necessary before the construction can be completed. FERC has not yet reached a decision on this matter.

4. OCRM is a division of the National Oceanic and Atmospheric Administration ("NOAA"), which is a division of the Department of Commerce, the agency ultimately responsible for the administration of the CZMA.

5. The CZMA permits coastal states to implement coastal management plans; they may then review proposed activities within the state that require federal permits for consistency with the plan. This case, in a nutshell, asks whether they can also review activities wholly in other states.

6. Each state's plan under the CZMA has "listed activities," which may be reviewed automatically. North Carolina wanted to review the pipeline as an unlisted activity, which requires OCRM permission. However, OCRM decided that the pipeline was a listed activity, and therefore North Carolina did not need permission to review the plan.

ceived *amicus curiae* briefs from the City of Chesapeake ("Chesapeake"), the Commonwealth of Virginia ("Virginia"), the Roanoke River Basin Association ("RRBA"), and the States of Florida, Alaska, Connecticut, Maine, Maryland, Mississippi, New Jersey, New York, South Carolina and the California Coastal Commission ("the *amicus* states").[7] On April 8, 1994, the court heard argument on all the outstanding motions.

While the court had the dispositive motions under consideration, the Department of Commerce, on May 19, 1994, concluded the administrative appeal. Commerce overruled North Carolina's objection to the proposed pipeline because, as it found, the proposed project is "consistent with the objectives or purposes of the CZMA." *Decision and Findings in the Consistency Appeal of the Virginia Electric and Power Company from an Objection by the North Carolina Department of Environment, Health, and Natural Resources, May 19, 1994* ("Commerce Decision") at 1, *citing* 16 U.S.C. § 1456(c)(3)(A). The court then ordered the parties to submit supplemental briefs on the effect, if any, of the Commerce Decision. All such briefs have been submitted, and the matter is now ripe for decision.

## II.  Analysis

■ Both North Carolina and the federal defendants have moved to dismiss this case on the grounds that the court has no jurisdiction over the subject matter of the case. Agreeing that the action is now moot, the court DISMISSES the case.[8]

"[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before [it].'" *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975), *quoting North Carolina*

*v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971); *see also California v. San Pablo & Tulane R.,* 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893) (a federal court "is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it"). This prohibition is grounded in Article III of the Constitution.

> Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies. *DeFunis v. Odegaard,* 416 U.S. 312, 316 [94 S.Ct. 1704, 1705–06, 40 L.Ed.2d 164] (1974). To satisfy the Article III case-or-controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision. *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38 [96 S.Ct. 1917, 1924, 48 L.Ed.2d 450] (1976).

*Iron Arrow Honor Society v. Heckler,* 464 U.S. 67, 70, 104 S.Ct. 373, 374–75, 78 L.Ed.2d 58 (1983) (per curiam). In this case, defendants argue that, because plaintiff prevailed in the administrative hearing, it has not been injured in any way that can be redressed by this court.

■ "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). Here, plaintiff brought this case complaining of the ongoing review in the agency. Now that the review has been completed, and plaintiff has been victorious, plaintiff cannot complain of any injury caused by the agency proceeding.[9] Plaintiff has also

---

7. Chesapeake and Virginia side with Virginia Beach, while RRBA and the *amicus* states side with North Carolina and the federal defendants.

8. In defendants' motions to dismiss, they argued that there was no final agency action sufficient to confer jurisdiction under the Administrative Procedure Act (the "APA"), that plaintiff had not exhausted its administrative remedies, that the case was not ripe, and that plaintiff did not have standing to bring the case. Because the administrative appeal is now finished, these arguments

are in large part no longer applicable. Moreover, since the court finds this case to be moot, it will not address these other jurisdictional issues. Likewise, it will not address any of the issues raised in the parties' summary judgment motions.

9. Plaintiff did not request any damages from this court, but merely asked for a declaratory judgment that the agency proceeding was invalid. Plaintiff no longer has an interest in having that

requested a declaratory judgment from this court that interstate review is not allowed under the CZMA. However, asking for a declaratory judgment will not, alone, create a case or controversy. *Comite de Apoyo v. Dep't of Labor,* 995 F.2d 510, 513 (4th Cir. 1993). "Rather, plaintiff[ ] must identify some further concrete relief that will likely result from the declaratory judgment. Otherwise, plaintiffs with mooted claims of injury could gain federal jurisdiction simply by demanding declaratory relief." *Id.* Plaintiff has not and cannot identify any such further relief in this case.

■ "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). Plaintiff here has failed to show that the disagreement between the parties contains sufficient immediacy and reality. Plaintiff claims that this decision is needed because of the probability that North Carolina will appeal the Commerce decision to some federal district court. In part, plaintiff argues that efficiency and the need to conserve judicial resources support the rendering of a decision by this court. However, that a decision by this court might have future collateral legal consequences in another federal court does not establish a justiciable controversy under Article III. *See Phillips v. McLaughlin,* 854 F.2d 673, 677 (4th Cir.1988).

In *Phillips,* the plaintiff challenged a regulation which was superseded before the appeal was concluded. The Fourth Circuit held that the case was moot, regardless of the fact that the parties might choose in the future to challenge the new regulation. *Id.* Not even the concern for judicial resources could overcome the fact that the case was moot:

> The parties' arguments concerning the need to conserve judicial resources have

superficial appeal but may not be adopted. While it is regrettable that if plaintiffs were to present a legal challenge to the [new] regulation as implemented, the parties might be required to expend resources litigating anew [the agency's interpretation of the old regulation], the Constitution does not permit us to classify an opinion as nonadvisory by anticipating a challenge to the new ... regulation.

*Id.* Similarly, in this case, the possibility that North Carolina may choose in the future to challenge the Commerce Decision in a federal court, thereby requiring the parties to readdress the issue of interstate review, does not create a controversy in this case where one no longer exists.

The cases cited by plaintiff to show that the existence of other litigation can prevent a finding of mootness are inapposite. In all the cases cited by plaintiff, the other litigation was ongoing, not simply likely to occur sometime in the future. *See Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 n. 1 (5th Cir.1993) (ongoing appeal); *Katz v. Dole,* 709 F.2d 251, 253 n. 1 (4th Cir.1983) (ongoing administrative proceedings); *National Wildlife Federation v. Burford,* 677 F.Supp. 1445, 1453 (D.Mont.1985), *aff'd in part,* 871 F.2d 849 (9th Cir.1989) (ongoing motion for reconsideration). In short, "a plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action." *United States v. SCRAP,* 412 U.S. 669, 688–89, 93 S.Ct. 2405, 2417, 37 L.Ed.2d 254 (1973). Plaintiff simply cannot meet this burden in this case.[10]

■ Furthermore, this case does not fall within an exception to the mootness doctrine. It is not "capable of repetition, yet evading review." *See Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). That exception only applies when "(1) the challenged action [is] in its duration too short to be fully litigated

---

proceeding, now concluded in plaintiff's favor, declared invalid.

**10.** The parties' discussion of *Cardinal Chem. Co. v. Morton Intern., Inc.,* —— U.S. ——, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993) is misplaced in this

case. Not only did that case involve the peculiarities of patent law, but the Court specifically noted that it was dealing with the jurisdiction of an intermediate appellate court, not a trial court. *Id.* at ——, 113 S.Ct. at 1974.

prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975). Here, the administrative proceeding was not inherently too limited in duration for this case to be litigated prior to the conclusion of the agency's review; it was merely the unique circumstances of this case and the ruling in plaintiff's favor that resulted in an administrative decision which mooted this action. Moreover, plaintiff has made absolutely no showing that it is likely to be haled before that agency in such an "interstate review" context again.

Similarly, the "voluntary cessation" exception does not apply in this case. *See County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) ("as a general rule, 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.,* does not make the case moot'") (*quoting United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)). As plaintiff admits, the agency did not voluntarily cease to do anything. *See* Plaintiff's Supplemental Brief at 10. The agency subjected plaintiff to a full and complete proceeding, allowing interstate review in the process. The only cessation in this case was the conclusion of the administrative proceeding, in plaintiff's favor factually, despite the legal ruling to the contrary. This is not "voluntary cessation" as addressed by the Court in *Davis.*

### III. Conclusion

Since there is no longer any case or controversy between these parties, and since no exception to the mootness doctrine applies, the defendants' motions to dismiss are GRANTED because the case before this court is now moot.

The Clerk is DIRECTED to send a copy of this Opinion and Final Order to all counsel of record.

It is so ORDERED.